IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANA CROSBY<br>4137 E. 186th Street<br>Cleveland, Ohio 44122<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF MAPLE HEIGHTS<br>5353 Lee Road<br>Maple Heights, Ohio 44137<br><br>  -and-<br><br>FRANK CONSOLO<br>c/o City of Maple Heights<br>5353 Lee Road<br>Maple Heights, Ohio 44137<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:17-cv-01822<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR INJUNC-**<br>**TIVE RELIEF AND DAM-**<br>**AGES**<br><br>**(Jury Demand Endorsed**<br>**Hereon)** |

Plaintiff, Jana Crosby, by and through undersigned counsel, as her Complaint against Defendants City of Maple Heights and Frank Consolo, states and avers the following:

## INTRODUCTION

1. Plaintiff Jana Crosby is a resident of the city of Cleveland, county of Cuyahoga, and state of Ohio.

2. Defendant City of Maple Heights ("Maple Heights") is a municipality located in Cuyahoga County, Ohio.

3. Defendant Frank Consolo is and, at all times material herein, was Law Director of Maple Heights.

4. At all times referenced herein, Consolo was acting in the course and scope of his employment at Maple Heights.

5. At all times referenced herein, Consolo was employed in a supervisory capacity over Crosby.

6. At all times material herein, Maple Heights was Crosby's employer for the purposes of Ohio Rev. Code § 4112.01(A)(2).

7. Maple Heights is, and at all times material herein was, subject to the provisions of 29 U.S.C. § 203(s)(1)(c) and Ohio Rev. Code § 4111.03, which require public agencies to compensate employees who work in excess of forty hours in one workweek at a rate of one and one-half times the employees' normal wage rate.

8. At all times material herein, Maple Heights was Crosby's employer pursuant to Ohio Rev. Code § 4111 *et seq*.

9. At all times material herein, Maple Heights was Crosby's employer pursuant to 29 U.S.C. § 203(d).

10. Jurisdiction is proper over Maple Heights pursuant to 28 U.S.C. § 1331 in that Crosby is alleging federal law claims arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615.

11. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which Maple Heights operates and conducts business.

12. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

**FACTUAL ALLEGATIONS**

14. Crosby incorporates by reference the allegations from the preceding paragraphs, as if fully realleged herein.

15. Maple Heights employed Crosby from January 6, 2015 until April 17, 2017.

16. At the time of her termination, Crosby was employed as a Senior Accountant.

17. Prior to October 2016, Crosby had a sterling employment record.

18. In or around October 2016, Consolo took over as Law Director at Maple Heights.

19. Crosby experienced an immediate change in the workplace environment as soon as Consolo took over as Law Director.

20. Prior to Consolo taking over as Law Director at Maple Heights, Crosby was paid overtime for all hours worked over forty (40) in a week.

21. In fact, Maple Heights city ordinances mandated that Crosby's position, Senior Accountant, be paid overtime for all hours worked over forty (40) in a week.

22. In or around January 2017, Consolo unilaterally and without warning determined that Crosby was suddenly exempt from any overtime pay.

23. Consolo did not investigate or analyze what Crosby's actual job duties entailed, and instead, simply decided that Crosby would not be compensated time and a half for all hours worked over 40 in a week.

24. In or around January 2017, as soon as Crosby found out she was no longer being paid overtime, Crosby complained to Consolo verbally and in writing that she was entitled to overtime compensation under the law.

25. Crosby's verbal and written complaints regarding the unlawful failure of Maple Heights to compensate her for overtime constituted protected activity under the FLSA, 29 U.S.C. § 215(a)(3).

26. In response to Crosby's complaints regarding the unlawful failure to pay overtime, Consolo replied that he previously asked Crosby if she exercised discretion and independent judgment in her position and Crosby responded "yes."

27. Consolo, in fact, never asked Crosby if she exercised discretion and independent judgment in her position.

28. Crosby never told Consolo that she did not exercise discretion and independent judgment in her position.

29. Consolo, who is an attorney, was, or should have been, fully aware that simply asking an employee if they "exercise independent judgment" in his or her position is not determinative of whether an employee is exempt under the FLSA.

30. Consolo was, or should have been, aware that only the employee's actual job duties are determinative of whether an employee is exempt under the FLSA.

31. Based on Consolo's own claim that he determined Crosby was exempt by asking Crosby if she exercised discretion and independent judgment in her position, Maple Heights failed to investigate what Crosby's actual job duties were in making its determination that Crosby was exempt from overtime compensation.

32. Crosby's primary duties as Senior Accountant did not include the exercise of discretion and independent judgment with respect to matters of significance.

33. From January 2017 until her termination on April 17, 2017, Crosby was non-exempt for the purposes of Ohio Rev. Code § 4111, *et seq.* and 29 U.S.C. § 200 *et seq.*

34. From January 2017 until her termination on April 17, 2017, Crosby regularly worked in excess of forty hours per workweek.

35. From January 2017 until her termination on April 17, 2017, Crosby regularly performed substantial work for the benefit of Maple Heights after her regular working hours while at home.

36. Crosby's supervisors at Maple Heights were aware that Crosby regularly performed work for the benefit of Maple Heights after her regular working hours while at home.

37. From January 2017 until her termination on April 17, 2017, Maple Heights did not pay Crosby overtime wages for hours Crosby worked in excess of forty per workweek.

38. Consolo and other high-ranking officials at Maple Heights were angered by Crosby's complaints that she was not being paid overtime in violation of the law.

39. Consolo and other high-ranking officials at Maple Heights were determined to get rid of Crosby due to her complaints of Maple Heights' unlawful failure to pay her overtime.

40. Soon after Crosby's complaints regarding Maple Heights' unlawful failure to pay overtime, Consolo approached Crosby and told her that he was now requiring her to arrive at work by 8:30 a.m. every day.

41. Crosby informed Consolo that she suffered from diabetes, which made getting to work at 8:30 a.m. difficult some mornings when she was having diabetic issues.

42. Crosby asked Consolo for an accommodation that she not be required to change her usual arrival time at work to 8:30 a.m.

43. Crosby's diabetes substantially limits one or more major life activities.

44. Crosby, as a result of her diabetes, is disabled for the purposes of Ohio Rev. Code § 4112.

45. Alternatively, Maple Heights and Consolo regarded Crosby as disabled as a result of Crosby's diabetes.

46. Notwithstanding any disability, actual or perceived, Crosby remained, at all times material herein, fully qualified for the position of Senior Accountant at Maple Heights.

47. Consolo, without engaging in any interactive process to determine if Crosby's request for disability accommodation was reasonable, summarily denied Crosby's request for accommodation.

48. Crosby immediately asked Consolo to reconsider, and informed Consolo that Crosby had previously been granted an accommodation for flexibility in her morning hours due to her disability.

49. Consolo again summarily denied Crosby's reasonable accommodation request without engaging in any interactive process.

50. In or around February 2017, Crosby approached the Maple Heights Human Resources Department and complained that Consolo was refusing to consider Crosby's request for a disability accommodation.

51. Cheryl Seidenwand, HR Manager at Maple Heights, failed to initiate an interactive process to determine if Crosby's request for a disability accommodation was reasonable.

52. Crosby asked that Seidenwand provide her with FMLA paperwork so that she could utilize intermittent leave under the FMLA when she had diabetic issues.

53. Crosby's request to be furnished with FMLA paperwork constituted statutorily protected conduct.

54. Seidenwand did not get the necessary paperwork to Crosby until approximately March 2017.

55. Crosby immediately made an appointment with her doctor with the intention of getting the FMLA paperwork filled out and returned to Maple Heights so Crosby could utilize intermittent FMLA leave due to her disability.

56. Crosby was concerned because the earliest appointment she could schedule with her doctor to complete the FMLA paperwork was May 2017.

57. Crosby informed Seidenwand that Crosby had set up an appointment with her doctor in May 2017 to complete the FMLA paperwork, and Seidenwand told Crosby not to worry.

58. Soon after Crosby went to the Maple Heights HR Department to (1) complain about Consolo's refusal to grant a reasonable disability request, and (2) seek intermittent FMLA leave, Crosby was abruptly called into a meeting with the Maple Heights Chief of Police.

59. The Maple Heights Chief of Police accused Crosby of changing records in the payroll system.

60. Crosby strenuously denied the accusation and said that the only record change she had ever initiated was changing the direct deposit account of an employee per that employee's request.

61. The accusation that Crosby inappropriately changed payroll records was made up out of thin air to get rid of Crosby because of her complaints of Maple Heights' refusal to pay her overtime compensation.

62. The accusation that Crosby inappropriately changed payroll records was made up out of thin air to get rid of Crosby because of her complaints regarding Maple Heights' refusal to grant her a reasonable disability accommodation request.

63. The accusation that Crosby inappropriately changed payroll records was made up out of thin air to get rid of Crosby because of her attempt to seek intermittent FMLA leave.

64. In or around late March 2017, Crosby was placed on administrative leave over the patently false claim of inappropriately changing employee records in the payroll system.

65. Maple Heights' act of placing Crosby on administrative leave constituted an adverse employment action.

66. Maple Heights' accusation that Crosby did anything inappropriate relating to Maple Heights' payroll system was purely pretextual.

67. Maple Heights ultimately determined that its accusation against Crosby regarding the payroll system was false.

68. However, Maple Heights was still determined to get rid of Crosby, so it quickly created another pretextual reason to oust Crosby from her job.

69. Crosby was then told that she was being accused of storing city records on a flash drive without authorization.

70. Crosby informed Maple Heights that she was authorized by the previous Finance Director to have certain records on a flash drive so she could complete tasks while at home after regular work hours.

71. Maple Heights management was aware that Crosby regularly completed work tasks at home.

72. Crosby was never informed that completing work tasks at home after regular working hours, which would have to involve taking city records home, was forbidden.

73. Despite the fact that Crosby was authorized to take city records home to complete work tasks after-hours, Maple Heights determined that this was its best chance to terminate Crosby's employment.

74. On or about April 17, 2017, Maple Heights terminated Crosby's employment.

75. The accusation that Crosby was taking city records home without authorization was fabricated to terminate Crosby's employment because of her complaints of Maple Heights' refusal to pay her overtime compensation.

76. The accusation that Crosby was taking city records home without authorization was fabricated to terminate Crosby's employment because of her complaints regarding Maple Heights' refusal to grant her a reasonable disability accommodation request.

77. The accusation that Crosby was taking city records home without authorization was fabricated to terminate Crosby's employment because of her attempt to seek intermittent FMLA leave.

78. The accusation that Crosby was taking city records home without authorization was purely pretextual.

79. Crosby's employment was terminated without justifiable cause.

### FIRST CAUSE OF ACTION
### (Failure to Pay Overtime Compensation)
### (Against Maple Heights Only)

80. Crosby incorporates by reference the allegations from the preceding paragraphs as if fully realleged herein.

81. Crosby worked over forty (40) hours per week during her employment with Maple Heights.

82. Pursuant to Ohio Rev. Code § 4111.03(A) and 29 U.S.C. § 207, an employer must pay a non-exempt employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty (40) hours in one work week.

83. Crosby was a non-exempt employee for purposes of Ohio Rev. Code § 4111.03(A) and 29 U.S.C. § 207.

84. Maple Heights failed to pay Crosby overtime for any hours she worked over forty (40) in a given week between January 2017 until April 17, 2017.

85. As a direct and proximate result of Maple Heights's failure to pay Crosby her lawfully earned overtime wages, Crosby suffered damages.

86. Maple Heights willfully and/or intentionally violated Ohio Rev. Code § 4111.03(A) and 29 U.S.C. § 207.

87. Maple Heights acted in bad faith in violating Ohio Rev. Code § 4111.03(A) and 20 U.S.C. § 207.

88. As a direct and proximate result of Maple Heights's failure to pay Crosby her lawfully earned overtime wage, pursuant to Ohio Rev. Code § 4111.10(A), Maple Heights is liable to Crosby for the full amount of the overtime wage rate, and for costs and reasonable attorneys' fees as may be allowed by the Court.

89. As a direct and proximate result of Maple Heights's failure to pay Crosby her lawfully earned overtime wage, pursuant to 29 U.S.C. § 216(b), Maple Heights is liable to Crosby for the full amount of the overtime wage rate, an additional equal amount as liquidated damages, as well as costs and reasonable attorney's fees.

## SECOND CAUSE OF ACTION
**(Unlawful Retaliation Based on Protected Wage Complaints)**
**(Against Maple Heights Only)**

90. Crosby incorporates by reference the allegations from the preceding paragraphs as if fully realleged herein.

91. In or around late 2016, Crosby made complaints to Maple Heights regarding Maple Heights' failure to pay her overtime compensation.

92. Crosby's complaints regarding Maple Heights' failure to pay her overtime compensation constituted protected activity pursuant to Ohio Rev. Code § 4111.13(B) and 29 U.S.C. § 215.

93. Following Crosby's complaints regarding Maple Heights' failure to pay her overtime compensation, Maple Heights retaliated against Crosby by fabricating multiple allegations

against Crosby, placing Crosby on administrative leave, and ultimately terminating Crosby's employment just months after her complaints

94. Pursuant to Ohio Rev. Code § 4111.13(B) and 29 U.S.C. § 215, no employer shall discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that the employee has not been paid wages in accordance with the overtime compensation provisions of Ohio Rev. Code § 4111.01 et seq. and/or 29 U.S.C. § 201 et seq.

95. Maple Heights' act of terminating Crosby from her employment constituted retaliatory discharge in violation of Ohio Rev. Code § 4111.13(B) and 29 U.S.C. § 215.

96. As a direct and proximate result of Maple Heights' retaliation for Crosby's protected wage complaints, Maple Heights is liable to Crosby for the full amount of the overtime wage rate, an additional equal amount as liquidated damages, as well as costs and reasonable attorney's fees.

**THIRD CAUSE OF ACTION**
**(Failure to Accommodate in Violation of Ohio Rev. Code § 4112.02)**
**(Against All Defendants)**

97. Crosby incorporates by reference the allegations from the preceding paragraphs as if fully realleged herein.

98. Throughout her employment, Crosby was fully competent to perform the duties of her position at Maple Heights.

99. Crosby is and, at all times material herein, was disabled.

100. Crosby repeatedly requested reasonable accommodations of Defendants.

101. Defendants repeatedly refused to engage in an interactive dialog with Crosby concerning Crosby's requested accommodations.

102. Defendants repeatedly refused to grant Crosby reasonable accommodations.

103. Defendants' refusal to engage in an interactive dialog was in violation of Ohio Rev. Code § 4112.02.

104. Defendants' refusal to accommodate Crosby's disability was in violation of Ohio Rev. Code § 4112.02.

105. As a direct and proximate result of Defendants' unlawful conduct, Crosby has suffered and will continue to suffer damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of Ohio Rev. Code § 4112.02)
### (Against All Defendants)

106. Crosby incorporates by reference the allegations from the preceding paragraphs as if fully realleged herein.

107. Pursuant to Ohio Rev. Code § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section …"

108. Defendants had an unlawful discriminatory practice of denying reasonable disability accommodation requests from employees without engaging in an interactive dialogue.

109. Crosby opposed Defendants' unlawful discriminatory practice by complaining to Consolo and Maple Heights' HR Department that she was unlawfully being denied a disability accommodation.

110. Defendants retaliated against Crosby for opposing Defendants' failure to accommodate her disability when Defendants fabricated an allegation against Crosby concerning changing employee payroll records and placed Crosby on administrative leave.

111. Defendants retaliated against Crosby for opposing Defendants' failure to accommodate her disability when Defendants fabricated an allegation against Crosby concerning taking city records home without authorization.

112. Defendants retaliated against Crosby for opposing Defendants' failure to accommodation her reasonable disability request when they terminated Crosby's employment for pretextual reasons.

113. Defendants violated Ohio Rev. Code § 4112.02(I) when they retaliated against Crosby for opposing the unlawful failure to accommodate.

114. As a direct and proximate result of Defendants' wrongful conduct, Crosby has suffered and will continue to suffer damages.

## FIFTH CAUSE OF ACTION
### (Retaliatory Discharge in Violation of the Family and Medical Leave Act)
### (Against Maple Heights Only)

115. Crosby incorporates by reference the allegations from the preceding paragraphs as if fully realleged herein.

116. Maple Heights is a covered employer under the FMLA.

117. During her employment, Crosby suffered from a serious health condition.

118. Crosby was forced to seek FMLA leave in order to care for and/or treat her serious health condition.

119. At the time Crosby elected to seek FMLA leave, she was a qualified employee under the FMLA.

120. After Crosby sought FMLA leave, Maple Heights retaliated against her.

121. After Crosby sought FMLA leave, Maple Heights retaliated against her by fabricating an allegation against Crosby concerning changing employee payroll records and placing Crosby on administrative leave.

122. After Crosby sought FMLA leave, Maple Heights retaliated against her fabricating an allegation against Crosby concerning taking city records home without authorization.

123. After Crosby sought FMLA leave, Maple Heights retaliated against her when they terminated Crosby's employment for pretextual reasons.

124. Maple Heights willfully retaliated and discriminated against Crosby in violation of 29 U.S.C. § 2615(a).

125. As a direct and proximate result of Maple Heights' conduct, Crosby suffered and will continue to suffer damages.

126. As a direct and proximate result of Maple Heights' conduct, Crosby is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

**CONCLUSION**

Plaintiff Jana Crosby seeks judgment against Maple Heights and Consolo in an amount in excess of $25,000 to fully, fairly, and justly compensate her for injury, damage, and loss, and respectfully prays that this Court enter judgment in her favor and award her past and future economic and non-economic compensatory damages, fringe benefits, consequential damages, incidental damages, punitive damages, liquidated damages, interest, all reasonable attorney's fees, costs and expenses, and any additional legal or equitable relief available under law, including, but not limited to back pay, future losses, reinstatement, and promotion.

Respectfully Submitted,

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)
Sobel, Wade & Mapley, LLC
2460 Fairmount Boulevard, Ste. 314
Cleveland, Ohio 44106
T: (216) 223-7213
F: (216) 223-7213
sobel@swmlawfirm.com

*Attorney for Plaintiff Jana Crosby*

## JURY DEMAND

Plaintiff Jana Crosby demands a trial by jury by the maximum number of jurors permitted.

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)

*Attorney for Plaintiff Jana Crosby*